IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:07-CR-110-FL

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) **MEMORANDUM & RECOMMENDATION** |
| | ) |
| LEWIS CARNELL JACKSON, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on Defendant Lewis Carnell Jackson's motion to suppress based on his alleged request for a lawyer after being arrested but before being interviewed. [DE-23]. The government has responded, [DE-25], and the court held an evidentiary hearing on January 28, 2008, to develop the record. At the January 28, 2008 hearing, the court heard testimony from three government witnesses, Detective Todd Marshburn, Detective Eric Emser, and Sergeant Kyle Wescoe, all with the Raleigh Police Department, as well as Defendant Lewis Jackson. Accordingly, this matter is ripe for review.

## STATEMENT OF THE FACTS

A.  Detective Marshburn

The government's first witness was Detective Marshburn. He testified that he is a member of the Raleigh Police Department and had been on the force for ten years at the time of the hearing. He stated that he has received extensive training in interviewing and interrogating defendants. Detective Marshburn testified that it is the policy of the Raleigh

1

Police Department to stop questioning a defendant once he asks for a lawyer. He also stated that if a defendant invokes his right to counsel, it is standard procedure for the officer to relay to the lead investigator the defendant's request to speak to a lawyer. Detective Marshburn stated that he did not know Jackson before the underlying arrest.

Detective Marshburn testified that on February 22, 2007, a confidential informant let police know of a potential drug buy that was to take place later that day around 7:00 p.m. in a McDonald's parking lot. Detective Marshburn was the lead investigator assigned to monitor any possible illegal activity. He stated that he was in the McDonald's parking lot on the evening of February 22, 2007. He saw a vehicle arrive, go through the drive through and park in the parking lot. The confidential informant got out of his vehicle and got into the vehicle that had just arrived. When the confidential informant exited the car after conducting an alleged drug transaction, the police moved in and arrested the other people in the car. Jackson and two other individuals were arrested and the police found drugs and a gun in the car.

Detective Marshburn stated that Jackson and his two co-defendants were transported to the police station in separate vehicles so that they would not have an opportunity to talk to each other. He stated that he did not transport Jackson to the station.

Detective Marshburn stated that he was the first person to interview Jackson at the police station. Jackson had been placed by himself in an interview room on the fourth floor. Detective Marshburn testified that he read Jackson his <u>Miranda</u> rights while Jackson read along on the <u>Miranda</u> waiver form. Jackson appeared calm during the recitation. Detective Marshburn stated that Jackson did not say that he had already requested counsel or that he wanted counsel while Detective Marshburn was reading him his rights.

Detective Marshburn stated that both he and Jackson signed the Miranda waiver form. Detective Marshburn testified that he did not remember having a conversation with any of the detectives about Jackson prior to the interview and that if Jackson had invoked his right to counsel one of the officers would have informed him as per Raleigh Police Department Policy.

    B.    Detective Eric Emser

Next, Detective Eric Emser testified. He stated that he has been employed with the Raleigh police department for ten years and has had extensive training in interviewing witnesses and knows to alert the lead investigator if a defendant invokes his or her right to counsel.

He testified that he had no contact with Jackson prior to February 22, 2007. Detective Emser stated that he was asked to provide assistance for the potential drug arrest on February 22, 2007. He conducted surveillance in an unmarked police car on the outer perimeter of the area where the drug deal was to occur on the evening of February 22, 2007. He stated that once other police officers approached the vehicle in which Jackson was sitting and started arresting the occupants of the vehicle, he drove into the McDonald's parking lot. He stated that Jackson was handcuffed, placed in the front seat of his car, and buckled in, for transportation back to the police station.

Detective Emser stated that it took approximately seven minutes to drive to the station. During the ride, Detective Emser testified that Jackson did not ask for counsel. Detective Emser stated that the two did talk, but he could not remember what they discussed. He stated that he did not remember speaking to Detective Marshburn when he arrived at the police station. Detective Emser stated that he turned Jackson over to

agents at the police station, which concluded his role in the arrest.

### C. Sergeant Kyle Wescoe

Finally, Sergeant Kyle Wescoe testified for the government. He stated that he has been working for the Raleigh police department for 21 years and was the overall commander of the operation in which Jackson was arrested. He stated that he is familiar with Raleigh police procedure when a defendant requests a lawyer. He stated that when a defendant invokes his right to counsel, police immediately stop talking to the defendant unless the defendant reinitiates contact with the police.

Sergeant Wescoe stated that he did not know Jackson before the events that took place on February 22, 2007. On that night, Sergeant Wescoe was conducting surveillance of the McDonald's parking lot in an unmarked police vehicle. He stated that subsequent to the arrest, he drove his car in front of the car in which Jackson and the other individuals arrested were sitting so that they could not drive away. He stated that he decided to transport all three of the individuals arrested to the police station in unmarked cars because there was a lot of traffic in the McDonald's parking lot and it would be faster to use the police cars that were already at the scene.

Sergeant Wescoe stated that he transported another individual who was seated in the car with Jackson to the police station and interviewed that individual. He stated that to his knowledge none of the defendants were interviewed at the scene or during transportation to the police station. Sergeant Wescoe also testified that when he got to the station, he was not alerted that Jackson had invoked his right to counsel and there was no indication that Jackson had asked for a lawyer.

### D. Lewis Carnell Jackson

4

Defendant Lewis Carnell Jackson took the stand and testified. He stated that on the evening of February 22, 2007, he was in a car with two other individuals. He testified that they drove to the McDonald's and parked in the parking lot. Jackson testified that during his arrest, he was taken out of his car and told not to look at the police officers, some of whom were wearing masks. He stated that while he was looking down, he saw police take drugs and a gun from the car. Jackson stated that he was placed in the front seat of a police vehicle but did not remember what the officer looked like who drove the police car, whether he was wearing a mask, what the car looked like or how long it took them to get to the station.

Jackson testified that while in the police car, he initially swore obscenities. Jackson stated that the officer asked Jackson what was wrong. Jackson then testified that he stated that he was in a bad situation and needed help. Jackson stated that the officer told him that the only way he could help himself was to give information to the police. Jackson then testified that he replied that the only person who could help him was a federal agent whom his brother had known and a lawyer. He stated that he asked specifically for a particular federal agent by name and a lawyer. Jackson testified that the police officer transporting him to the station said that he would tell the lead investigator what Defendant had said about the federal agent and the lawyer.

Jackson stated that when he got to the station, he was placed in a squad room before being put in an individual room for an interview. Jackson testified that after he was placed in an individual room, an officer came to interview him. He stated he did not remember the officer reading him his Miranda rights, but he did remember signing the Miranda waiver form. Jackson testified that the officer left the room, and came back with

5

a Federal Bureau of Investigation ("FBI") agent but the FBI agent was not interested in speaking with Jackson. Jackson stated that he asked for a lawyer because he knew he was in trouble from the beginning and could potentially face a long sentence.

## DISCUSSION

Jackson is charged with possession of a firearm by a convicted felon in violation of Title 18, United States Code, sections 922(g)(1) and 924, possession of a firearm in furtherance of a drug trafficking offense in violation of Title 18, United States Code, section 924(c)(1)(A), and conspiracy to possess with the intent to distribute marijuana in violation of Title 21, United States Code, section 846. In his motion to suppress, Jackson claims that he asked for a lawyer in the police vehicle on his way to the station. Accordingly, Jackson asserts that his Fifth Amendment right to counsel was violated and that all statements that he made to police during his interrogation after arrest must be suppressed. It is the court's opinion, however, that Jackson's constitutional rights were not violated.

When a defendant invokes his right to counsel during a custodial interrogation, all interrogation must cease until a lawyer is made available. Edwards v. Arizona, 451 U.S. 477, 484 (1981). Once a defendant requests a lawyer, any statements obtained from the defendant during an interrogation is inadmissible unless the defendant, himself, initiates further conversation with police or the defendant obtains counsel and continues the interrogation with the lawyer present. Id. There is no question that Jackson was arrested when he was placed in the unmarked police vehicle to be transported to the station. Therefore, Jackson was in police custody during the transport to the police station and while he was in the interview room at the police station. See United States v. Leshuk, 65 F.3d 1105, 1108 (4th Cir. 1995) (noting that an individual under arrest is in police custody).

Accordingly, the court must determine whether Jackson requested counsel on his way to the police station.

After observing the testimony of the witnesses at the hearing and assessing their demeanor on the stand, the Court finds the testimony of the government's witnesses to be credible and consistent. Conversely, the court does not find the testimony of Jackson to be credible. All three officers testified that they have been extensively trained on how to interview defendants and that the minute a defendant requests a lawyer, they know that the questioning of the defendant must stop. In particular, Detective Emser stated that he transported Jackson to the jail and at no time did Jackson say that he wanted a lawyer. He stated that he understood his obligation, if a defendant does ask for counsel, to alert the officer in charge. Jackson, on the other hand, stated that he was unsure of most of the particulars during his arrest and transport. He did not know what the officer looked like who transported him to the station, what the car looked like, whether the officer was wearing a mask, or how long it took to get to the station. Jackson admitted that he signed the Miranda waiver and did not request a lawyer or ask for any type of counsel while he was in the interview room.

Other than Jackson's statements on the stand that he asked to speak to a federal agent and a lawyer during transport to the police station, there is no evidence that he requested the assistance of counsel. The court credits the testimony of Detective Emser when he stated that Jackson did not request the assistance of a lawyer while he was transporting Jackson to the police station. See United States v. Stevenson, 396 F.3d 538, 542-43 (4th Cir. 2005) (noting that assessing the credibility of witnesses is the province of the district court). The evidence suggests that Jackson was properly informed of his rights,

and assented to the interrogation after making a voluntary and intelligent waiver of his rights to remain silent and to secure the services of counsel, as evidenced by his signature on the Miranda waiver form. There was absolutely no evidence presented to suggest that Jackson's waiver in the interview room was anything other than voluntary and intelligent. See Moran v. Burbine, 475 U.S. 412, 421 (noting that a waiver is voluntary if it is "the product of a free and deliberate choice" and that it is knowing if it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it").

## CONCLUSION

For the reasons set forth above, the court **RECOMMENDS** that Defendant's Motion to Suppress be **DENIED** [DE-23]. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This 5th day of February 2008.

DAVID W. DANIEL
United States Magistrate Judge