IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:07-CR-110-FL-1
No. 5:12-CV-205-FL

| | |
|---|---|
| LEWIS CARNELL JACKSON, ) | |
| ) | |
| Petitioner, ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

This matter comes before this court for evidentiary hearing and entry of a memorandum and recommendation, in accordance with 28 U.S.C. § 636(b)(1)(B), on Petitioner Lewis Carnell Jackson's ("Jackson" or "Petitioner") claim under 28 U.S.C. § 2255 for ineffective assistance of counsel based on trial counsel's alleged failure to communicate a plea offer to Petitioner. [DE-113]; [DE-118 through -120]; [DE-121] at 7-9. The government filed a response in opposition. [DE-118]. On April 14, 2014, the undersigned conducted an evidentiary hearing on the issue. For the following reasons, it is recommended that Petitioner's claim be denied.

## I. BACKGROUND

On May 9, 2007, Jackson was indicted in a three-count indictment for possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924, conspiracy to unlawfully possess with intent to distribute a quantity of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). [DE-1]. The original indictment alleged an offense date for all charges of on or about February 22, 2007. *Id.* On March 14, 2008, a superceding indictment charged Jackson with an additional charge of possession with intent to distribute a quantity of marijuana and aiding and

abetting, in violation of 21 U.S.C. §§ 841(a)(1) and 2. [DE-39]. All other counts in the indictment remained the same, but the alleged date of the conspiracy charge was superceded to include the time period from February 2007 until March 24, 2007, reflecting a traffic stop of Jackson in Scotland County, North Carolina that occurred on March 24, 2007, where evidence from the vehicle was seized, including a "small baggie" of marijuana and handgun.

Prior to trial, Jackson filed a motion in limine to prohibit the government from making reference to or presenting evidence relating to the March 24, 2007 traffic stop. Following argument from Jackson and the government, the court denied Jackson's motion by oral order on April 1, 2008, and the case proceeded to trial. On April 3, 2008, a jury convicted Jackson of conspiracy to distribute and possess with intent to distribute a quantity of marijuana (Count One), possession with intent to distribute marijuana and aiding and abetting (Count Two), possession of a firearm in furtherance of a drug trafficking crime (Count Three), and possession of a firearm by a felon (Count Four). [DE-61, -65]. On July 10, 2008, Jackson was sentenced to 60 months on Count One, five months on Count Two, 60 months on Count Three, and 235 months on Count Four, all to be served consecutively, for a total sentence of 360 months. [DE-65]. Jackson appealed his conviction and sentence, [DE-66], which was affirmed by the Fourth Circuit on April 12, 2011. *See United States v. Jackson*, 423 F. App'x 329 (4th Cir. 2011).

On April 16, 2012, Jackson filed a petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. [DE-93]. On February 27, 2014, the court adopted the undersigned's memorandum and recommendation [DE-108] and dismissed Petitioner's motion to vacate on four grounds raised in the petition, but determined an evidentiary hearing was necessary on a newly raised fifth ground for ineffective assistance of counsel based on trial counsel's alleged failure to

2

communicate a plea offer to Petitioner. [DE-121]. On April 14, 2014, the undersigned conducted a hearing and received testimony from Petitioner, Danika Smith ("Smith") who is the mother of Petitioner's child, and James Saunders ("Saunders") who was Petitioner's trial counsel.

## A.   Testimony of Lewis Jackson

Jackson testified as follows at the evidentiary hearing. Jackson was arrested on state charges in January or February 2007 and on related federal charges in October 2007.[1] At the time of his arrest on the state charges, Jackson made a statement to local law enforcement that he would cooperate if he could "get something in return," but was told by the law enforcement officers they could not make him any promises. Jackson's first appointed counsel in this case withdrew within a month after appointment, and the two had no substantive discussions regarding discovery or a plea deal prior to his withdrawal. Saunders was appointed as counsel for Jackson in November 2007.

Jackson first met Saunders in November 2007 at the Hertford County jail, and the two discussed the case and the seriousness of the charges against Jackson. Saunders visited Jackson a second time in late November or early December 2007 to review discovery in the case. At neither meeting was there any discussion of a proposed plea agreement, and Jackson did not receive a copy of any proposed plea agreement. Jackson talked to Saunders about his innocence, which he no longer maintains, and about potential witnesses whom Saunders agreed to interview. In December, Saunders visited Jackson a third time at the Hertford County jail. Saunders told Jackson, as a general matter, that he could plead guilty and cooperate, but did not present any specific plea agreement from the government and there was no discussion regarding what the government might offer or what

---

[1] The docket in this case indicates that Jackson was indicted on May 9, 2007, arrested and had an initial appearance on July 12, 2007, in the Western District of North Carolina, and detained and committed to this district on July 17, 2007. [DE-1, -5].

3

sentence Jackson might receive. Jackson asked Saunders what pleading guilty and cooperating meant, *i.e.*, how much time Jackson would face, but Saunders gave him no specific response and only emphasized the seriousness of the charges.

Jackson next received a letter from Saunders regarding a suppression hearing and then met with Saunders in December for a fourth time to discuss and prepare Jackson's testimony for the suppression hearing. Jackson informed Saunders that he wanted to meet with the prosecutor from the U.S. Attorney's Office to find out what was going on in the case and to determine if he could make a better deal instead of going to trial where he could receive a life sentence. Saunders agreed to attempt to set up a meeting. Jackson next saw Saunders at the suppression hearing in January 2008, but Saunders did not discuss any proposed plea offer from the government. Jackson did meet with Assistant U.S. Attorney Ethan Ontjes ("AUSA Ontjes"), in the presence of Saunders, after the suppression hearing and asked AUSA Ontjes about how much time he would be facing and what would happen if he cooperated, to which AUSA Ontjes advised Jackson to speak with his attorney. No proposed plea agreement was discussed between AUSA Ontjes and Jackson. Saunders met with Jackson approximately one week after the suppression hearing to discuss preparations for trial, but there was no discussion regarding a proposed plea agreement.

Jackson received a letter from Saunders in January or February 2008 indicating the possibility of the government filing a motion pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553 for downward departure/variance in exchange for Jackson providing substantial assistance. The letter stated that if an offer was received from the government, Saunders would bring it to Jackson.[2] However,

---

[2] A copy of this letter was attached to one of Petitioner's filings in this case and is dated November 28, 2007. [DE-120-1] at 3. This document was admitted at the evidentiary hearing as Defendant's Exhibit 4.

4

Saunders never discussed with Jackson the contents of the letter, including the potential for a § 5K motion or a motion for downward departure/variance or any plea offer from the government. In February 2008, Jackson discussed with Saunders the statement Jackson made previously to local law enforcement when he was initially arrested regarding his willingness to provide assistance in exchange for a deal, but Saunders did not discuss with Jackson that AUSA Ontjes had contacted Saunders about the statement.

In April 2008, Jackson was found guilty at trial. After Saunders filed a notice of appeal, he withdrew from representation of Jackson and another attorney was appointed to represent Jackson on appeal. Jackson's conviction and sentence were subsequently affirmed on appeal. Jackson attempted to obtain his file from Saunders and received it only after contacting the state bar. In November 2013, upon his receipt and review of his file from Saunders, Jackson for the first time learned of the proposed plea agreement previously offered by the government in this case.[3] Thereafter, Jackson filed a motion to supplement his § 2255 petition to add a claim for ineffective assistance of counsel for failure to communicate the plea offer.[4] According to the proposed plea agreement, the government was willing to dismiss two counts of the indictment and give Jackson time off for substantial assistance, and Jackson would have accepted the plea deal had he been aware of the offer. Jackson also discovered in his file a letter dated January 22, 2008, from AUSA Ontjes to Saunders with a memorandum attached containing a summary of Jackson's statement to local law

---

[3] This document was admitted at the evidentiary hearing as Defendant's Exhibit 5.

[4] This document was admitted at the evidentiary hearing as Defendant's Exhibit 1 and was filed in the case at Docket Entry 113.

5

enforcement regarding his willingness to offer assistance to help himself with his charges.[5]

On cross examination, Jackson acknowledged that Saunders met with him several times, discussed discovery, the possibility of a plea, and the seriousness of the charges, set up a meeting with the prosecutor, and filed a suppression motion on Jackson's behalf. Jackson also acknowledged that despite his contention that he would have accepted the plea agreement due to his concern about facing a life sentence at trial, the plea agreement provided (1) that Jackson would plead guilty to Count 3, which carried a maximum term of life, and (2) that the government would make known any cooperation by Jackson, but did not promise a § 5K or Rule 35 motion. Jackson knew he would be considered a career offender.

**B.  Testimony of Danika Smith**

Danika Smith, the mother of Jackson's child, testified as follows at the evidentiary hearing. Smith talked with Saunders on the phone a few times, but does not recall if she ever met with him face to face. Smith indicated these communications occurred seven years ago and that she could not remember who contacted whom first. Initially, Smith and Saunders spoke about the charges Jackson was facing and Saunders explained the seriousness thereof. The next conversation between the two dealt with the situation in Scotland County and Saunders explained to Smith how evidence from one case could be used in another case by a different court. Saunders did not discuss with Smith in either of these conversations any proposed plea offer to Jackson. Smith could not recall if she had further

---

[5] At the hearing, the government objected to the admission of this document as containing hearsay, and the court reserved its ruling on admissibility. The court now concludes that the document is not being offered for the truth of the assertions therein, but rather to show that there were documents from the government, in addition to the proposed memorandum of plea agreement, that Saunders received prior to trial, but Jackson only received after trial. Saunders testified that he received the letter with the memo attached from AUSA Ontjes. Thus, because the document is not offered "to prove the truth of the matter asserted" therein, Fed. R. Civ. P. 801, it is not hearsay and the government's objection is overruled. The document is admitted as Defendant's Exhibit 6.

6

Case 5:07-cr-00110-FL   Document 132   Filed 04/24/14   Page 6 of 17

contact with Saunders, but may have talked to him again prior to Jackson's trial, because she was concerned about Jackson going to trial and the absence of a plea offer. Smith also submitted an affidavit, consistent with her testimony at the evidentiary hearing, which was filed in support of Jackson's motion.[6] On cross-examination, Smith acknowledged speaking with Saunders on more than one occasion and that he answered her questions.

C.      **Testimony of James Saunders**

Saunders testified as follows at the evidentiary hearing. Saunders has been licensed to practice law since August 1999, working in private practice as a criminal defense attorney for nine years, in the Public Defender's Office in District 3A for approximately five years, and as an Assistant District Attorney in District 3A since February 2013. Saunders has practiced in federal court since 2003 including work as a Fourth Circuit Court of Appeals panel attorney. Saunders has represented hundreds of defendants in state court and approximately 25 to 30 defendants in federal district court, not including his panel work at the Fourth Circuit.

Saunders represented Jackson beginning in 2007 and until he withdrew from the case in 2008. Saunders initially reviewed the discovery provided by the government in Jackson's case and determined that Jackson would be convicted of the offenses for which he was charged. Saunders met with Jackson to discuss his views of the case. Saunders explained that in general his initial client meetings consist of building a level of trust with his clients before discussing the "harsh realities" of the case, but that he would have discussed "the meat of the case" with Jackson early on in the case.

In support of a fee application Saunders submitted in this case as CJA panel attorney, he

---

[6] This document was admitted at the evidentiary hearing as Defendant's Exhibit 3.

7

included a letter to the district court containing an hourly worksheet detailing the duties he performed in the case.[7] The worksheet reflects several client meetings between Saunders and Jackson, including that Saunders met with and counseled Jackson regarding his "plea decision" on December 10 and 13. Saunders explained that his notation "plea decision" meant whether Jackson would accept the plea deal or maintain his innocence and proceed to trial. Saunders identified the proposed plea agreement sent to him from the government in this case and confirmed that he shared with Jackson all discovery received and discussed the plea offer with Jackson. Saunders elaborated that he was ethically bound to convey any plea offer to his client and that it was part of his practice to do so whether the client wanted to hear it or insisted on maintaining his innocence.

Saunders specifically recalled discussing the proposed plea agreement with Jackson. Saunders described meeting with Jackson at the Hertford County Sheriff's Office in a conference room, seated at one end of a long table with the plea agreement placed on the table in front of them so that Jackson could read it and Saunders could point out particular items. Saunders testified that this was consistent with his practice in all federal cases where he received a proposed plea agreement and that he would give a general overview of the agreement then turn to the terms "the client really cares about, which are what the government agrees to do." Saunders explained that Jackson was "looking at career offender" due to his criminal history and the way Jackson was charged, but that the government was willing to dismiss two charges in exchange for Jackson's plea of guilty to the third charge and that there was potential for a reduction for Jackson accepting responsibility. However, Saunders perceived the main benefit to Jackson under the proposed plea agreement was the opportunity for Jackson to cooperate with the government, and Saunders conveyed this to

---

[7] This document was admitted at the evidentiary hearing as Government's Exhibit B.

8

Jackson. Saunders indicated that Jackson did not respond favorably to the fact that he would be pleading to a § 924(c) count, which carried a significant term of incarceration, and that Jackson believed a potential sentence of 15 to 17 years–the range Saunders discussed with Jackson as a possibility in exchange for Jackson's cooperation–was "not good enough." Saunders recalled that Jackson wanted a guarantee as to his sentence in exchange for his cooperation and that Saunders tried to make clear the government does not provide any such guarantee. Saunders was frustrated by his inability to convince Jackson that accepting a plea with a potential 15 to 17 year sentence was preferable to risking a 360 month to life sentence if convicted at trial.

Jackson asked Saunders to set up a meeting between Jackson and AUSA Ontjes, which Saunders explained was unusual because he typically counsels his clients against talking with the prosecutor or an agent without a plea agreement already in place. However, AUSA Ontjes had told Saunders he believed Jackson could provide the government with a significant amount of information that could be very helpful and Saunders believed AUSA Ontjes was "a man of his word" and that if Jackson met with AUSA Ontjes it might help in establishing some level of trust that Jackson would actually benefit from his cooperation. Saunders also thought Jackson wanted to make his own assessment of AUSA Ontjes to determine if Jackson could trust him without receiving any express guarantee as to his sentence. Saunders described the meeting between AUSA Ontjes and Jackson as brief with not much being said and, thereafter, Jackson persisted in his desire to obtain a better deal than the one being offered.

On cross examination, Saunders testified that he first met with Jackson on November 14 and had received and reviewed discovery in the case, but had no independent recollection of whether he discussed the discovery at the first meeting with Jackson. Saunders did not believe he had received

9

a proposed plea agreement for Jackson at the time of this first meeting, but again had no specific recollection thereof. On November 19, Saunders called then Assistant U.S. Attorney Wes Camden ("AUSA Camden"), who was the first prosecutor assigned to Jackson's case, regarding the status of the case and to request a plea offer for Jackson. Saunders did not remember his exact conversation with AUSA Camden, but his typical practice was to ask the prosecutor to go ahead and send an offer if one was forthcoming. AUSA Camden did send a proposed memorandum of plea agreement, which Saunders explained would allow Jackson to plead guilty to Count 3 where the government would dismiss Counts 1 and 2 and consider Jackson's cooperation. Saunders also interviewed one of a couple of witnesses who Jackson claimed would absolve him of wrongdoing.

When questioned regarding his discussions with Jackson about the proposed plea agreement, Saunders explained that although he received Jackson's plea decision on December 10, he revisited the issue every time he talked to Jackson, characterizing it as a "running discussion." Saunders acknowledged his time sheet did not expressly state he discussed the "plea agreement" with Jackson. However, Saunders time sheet noted that on December 13, he discussed with Jackson his decision to plead not guilty, which Saunders explained would have encompassed Jackson's decision regarding the plea deal. Saunders also indicated that AUSA Ontjes ratified and never rescinded the plea deal offered by AUSA Camden. Saunders could not recall if he left a copy of the proposed plea agreement with Jackson, but he generally discouraged his clients from keeping discovery and other documents in the prison facility and would review documents with his clients and provide a copy to keep if so requested. When questioned about the obligation to provide a copy of any plea agreement to a defendant in conformity with the court's standard Rule 11 colloquy for felony arraignments where the defendant pleads guilty pursuant to a plea agreement, Saunders indicated that

10

since the plea was never accepted and signed, there would be no obligation to provide Jackson with his own copy unless requested. Saunders also stated he did not receive a request from Jackson for a copy of his file prior to being contacted by the state bar.

## II. LEGAL STANDARDS

### A.     Rule 12(b)(6)

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citations omitted). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments."

11

*Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

**B.      28 U.S.C. § 2255**

After conviction and exhaustion, or waiver, of any right to appeal, courts and the public can presume that a defendant stands fairly and finally convicted. *See United States v. Frady*, 456 U.S. 152, 164-65 (1982). However, 28 U.S.C. § 2255 provides a means for a defendant convicted of a federal offense to collaterally attack a conviction or sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). "[T]hus § 2255 relief is not limited to constitutional error in a conviction or sentence." *United States v. Mikalajunas*, 186 F.3d 490, 495 (4th Cir. 1999). However, where a petition seeks relief from a nonconstitutional error, "the scope of review . . . is more limited than that of constitutional error; a nonconstitutional error does not provide a basis for collateral attack unless it involves a fundamental defect which inherently results in a complete miscarriage of justice, or is inconsistent with the rudimentary demands of fair procedure." *Id.* "In a § 2255 proceeding, the burden of proof is on petitioner to establish his claim by a preponderance of the evidence." *Toribio-Ascencio v. United States*, Nos. 7:05-CR-00097-FL, 7:08-CV-211-FL, 2010 WL 4484447, at *1 (E.D.N.C. Oct. 25, 2010) (citing *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958)).

### III. DISCUSSION

Jackson seeks relief under § 2255 for ineffective assistance of counsel based on trial counsel's alleged failure to communicate a plea offer to petitioner. Pet'r's Mot. [DE-113] at 1. To demonstrate ineffective assistance of counsel, a petitioner must show that counsel's representation

12

was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, the petitioner must overcome a "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). As the district court explained in its order, "'[T]he Supreme Court [has] held that the Sixth Amendment right to counsel in the plea bargaining context is that counsel has a duty to communicate any offers from the Government to his client.'" *Jackson v. United States*, No. 5:07-CR-110-FL-1, 2014 WL 794029, at *3 (E.D.N.C. Feb. 27, 2014) (quoting *United States v. Pender*, 514 F. App'x 359, 360 (4th Cir. 2013) and citing *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012)). "Therefore, '[t]he failure of counsel to communicate a plea offer may constitute ineffective assistance of counsel.'" *Id.* (quoting *United States v. Mitchell*, 484 F. App'x 744, 745 (4th Cir. 2012)). "A successful claim for ineffective assistance of counsel in the plea bargaining process requires petitioner to show that '(1) counsel's performance was deficient, and (2) there is a reasonable probability that the deficiency prejudiced the defense.'" *Id.* at *4 (quoting *Merzbacher v. Shearin*, 706 F.3d 356, 363 (4th Cir. 2013) and citing *Strickland*, 466 U.S. at 687-88).

Jackson contends, in both his affidavit, [DE-113] at 9-10, and his testimony at the evidentiary hearing, that Saunders failed to communicate a proposed plea agreement from the government; however, Saunders' declaration, [DE-118-1] ¶ 2, and his testimony at the evidentiary hearing contradicts Jackson's claim, creating a disputed issue of fact requiring a credibility determination. *See Jackson*, 2014 WL 794029, at *5. "In assessing the credibility of witnesses, trial courts consider 'variations in demeanor and tone of voice.'" *Rahman v. United States*, No. 7:08-CR-126-D, 2013 WL 5222160, at *5 (E.D.N.C. Aug. 27, 2013) (quoting *Anderson v. City of Bessemer City, N.C.*, 470

13

U.S. 564, 575 (1985)), *adopted by*, 2013 WL 5230610 (E.D.N.C. Sept. 16, 2013). "In addition, '[d]ocuments or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it.'" *Id.* (citing *United States v. Marcavage*, 609 F.3d 264, 281 (3d Cir. 2010)). "Additional considerations can include the witness's motive to lie and the level of detail in the witness's statements." *Id.* (citing *United States v. Wilson*, 624 F.3d 640, 665 (4th Cir. 2010)).

Jackson's testimony that Saunders never communicated the government's plea offer is not credible to the extent it is undermined by both the documentary evidence and Saunders' cogent testimony. The court finds Saunders to be the more credible and persuasive witness based on Saunders' (1) specific recollections regarding his communications with Jackson regarding the plea agreement, (2) significant experience as a criminal defense attorney in both state and federal court, (3) actions in conformity with his standard practices, and (4) demeanor as a witness.

Saunders provided a detailed account of when he first communicated the government's proposed plea agreement to Jackson, recalling details about the location where they met and the table where Saunders laid out the plea agreement so that he could go through it with Jackson. Saunders also testified that his actions were in conformity with his standard practice when reviewing a plea agreement with a client in a federal case. Saunders' time records submitted to the court further corroborate his testimony. They note (1) a phone call to AUSA Camden regarding a "proposed plea" on November 19, 2007, (2) "review proposed plea agmt." on December 3, 2007, (3) "client counseling at Hertford Co. Jail re: plea decision" on December 10, 2007, and (4) "counseling client at Hertford Co. Jail re: decision to plead not guilty" on December 13, 2007. [DE-118-1] at 9-10. Saunders explained that each of these events was done in conformity with his standard practice and

14

also recounted from his recollection the substance of his discussions with Jackson regarding the proposed plea agreement.

Saunders also specifically recalled his frustration with Jackson's reluctance to accept the plea agreement, because Jackson wanted a better deal that included a guarantee as to the amount of time he would serve, and Saunders could not obtain such a deal for Jackson, who but for a plea deal would be facing a sentence of 30 years to life if convicted at trial. Saunders testified that in an attempt to establish a level of trust between his client and the government, he set up a meeting with Jackson and AUSA Ontjes, which was remarkable given Saunders typical practice not to let his clients meet with a prosecutor or agent prior to having a plea agreement in place. Saunders further testified that he continued to discuss the proposed plea deal with Jackson at every opportunity prior to trial. The court finds it simply implausible that Saunders would negotiate and receive a proposed plea agreement from the government for Jackson, meet with Jackson several times thereafter, and arrange a meeting between Jackson and AUSA Ontjes, all for the purpose of convincing Jackson to take a plea offer that Saunders never communicated to Jackson. Compounding the court's doubt as to the veracity of Jackson's assertion he was not informed of the plea offer is Jackson's insistence that he expressed time and again to Saunders his desire to obtain a plea deal in exchange for his cooperation with the government. Moreover, Jackson has provided no theory as to why Saunders would fail to communicate the proposed plea deal. *See Barentine v. United States*, 728 F. Supp. 1241, 1250 (W.D.N.C. 1990) ("[H]aving negotiated, at least in principle, a five year plea agreement with the government, it would have made no sense for [his counsel] to have failed to advise Petitioner of this offer.").

The court has also considered the testimony of Smith that Saunders never disclosed to or

15

discussed with her any proposed plea agreement for Jackson. However, Smith's recollection was admittedly incomplete, due to the passage of time, and her testimony, even if accepted as true, only shows that Saunders did not disclose the proposed plea agreement to her and not that he failed to disclose it to Jackson. Finally, to the extent Jackson's counsel attempted to argue at the hearing that Saunders' failure to leave a copy of the proposed plea agreement with Jackson is equivalent to not communicating the proposed plea agreement, no case law or other authority has been presented to the court to support such an argument and it is, thus, rejected.

Accordingly, the court finds that Saunders did, in fact, communicate the government's proposed plea agreement to Jackson and that, therefore, Jackson has failed to carry his burden to show, by a preponderance of the evidence, that Saunders provided ineffective assistance of counsel.

## IV. CONCLUSION

For the reasons states herein, it is RECOMMENDED that Petitioner's claim under 28 U.S.C. § 2255 for ineffective assistance of counsel based on trial counsel's alleged failure to communicate a plea offer to Petitioner be DISMISSED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

16

Case 5:07-cr-00110-FL   Document 132   Filed 04/24/14   Page 16 of 17

SO SUBMITTED, the 24th day of April 2014.

_____
Robert B. Jones, Jr.
United States Magistrate Judge

17